**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF VIRGINIA**
**Lynchburg Division**

| | | |
|---|---|---|
| In re YVONNE PHILLIPS TAYLOR, | ) | Case No. 05-60111-7 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |

## **ORDER**

For the reasons stated in the accompanying memorandum, the motion of the United States trustee to dismiss the above-styled case is denied.

So ORDERED.

Upon entry of this Order the Clerk shall forward copies to the United States trustee, the chapter 7 trustee, the Debtor and Mitchell R. Garbee, Esq., counsel for the Debtor.

Entered on this 14th day of November, 2005.

William E. Anderson
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
### WESTERN DISTRICT OF VIRGINIA
#### Lynchburg Division

In re YVONNE PHILLIPS TAYLOR,  ) Case No. 05-60111-7
            )
    Debtor.      )
            )
_____ )

## MEMORANDUM

This matter comes before the Court on a motion by the United States trustee to dismiss this case for substantial abuse. The motion is brought under section 707(b) of the bankruptcy code.[1]  Yvonne Phillips Taylor ("the Debtor") opposes the motion.

This Court has jurisdiction over this matter. 28 U.S.C. §§ 1334(a). This is a core proceeding. 28 U.S.C. § 157(b)(2)(A). Accordingly, this Court may render a final order.

The motion will be denied. For the reasons stated below, the Court concludes that it would not be a substantial abuse of the provisions of chapter 7 for the Debtor to continue under this chapter.

### I. Facts

The Debtor married in 2002.  At that time she owned her house.  She has one son who

---

[1]  Herein, "Section" refers to the given section in the bankruptcy code. The bankruptcy code is codified at 11 U.S.C. § 101 et seq.

1

is now 21 years old.  Approximately two-and-one-half years ago, she co-signed a security

agreement collateralized by a vehicle that was purchased by her son for his use. The Debtor

testified that she did not believe that the bank would loan the money to her son if she did not co-

sign the security agreement.[2]

Her son fell behind in his payments.   In June of 2004, the Debtor borrowed $3,100.00

from 401K savings account in part to help her son catch up on the vehicle payments.[3]  In

December of 2004, when she fell behind on her house payment and truck payment, the Debtor

borrowed another $2,200.00 from her 401K savings account.[4]  Eventually, the Debtor was no

longer able to make her son's car payments.  The lender obtained a judgment against her in the

approximate amount of $15,000.00 based on the default under the security agreement.

On January 11, 2005, when the lender began garnishing 25% of her wages the Debtor

filed an individual chapter 7 petition.  The Debtor has been employed as a CSR for six years by

Frito Lay.[5]  She scheduled monthly gross income of $2,083.37 and monthly net income of

$1,242.19.[6]  Her husband earns $1,690.00 per month in gross income and $1,042.97 per month

in net income after deductions for taxes and child support.

---

[2]       See Testimony of the Debtor, Transcript of Hearing, page 18: lines 6-10.

[3]       See Testimony of the Debtor, Transcript of Hearing, page 18: line 20 to page 19: line 18.  Also see
Loan Amortization Schedule, Debtor's Exhibit 2.

[4]       See Testimony of the Debtor, Transcript of Hearing, Page 24: lines 7-16.  Also see Loan
Amortization Schedule, Debtor's Exhibit 3.

[5]       See Schedule I.  The Court found the Debtor to be an honest, credible witness.

[6]       See Debtor's Schedule I.

2

The Debtor scheduled her residence at a fair market value of $67,700.00.[7] The property

secures a deed of trust in the approximate amount of $67,181.35.[8] The Debtor scheduled total

secured claims in the amount of $76,591.72 and unsecured claims in the amount of $23,835.71,[9]

an amount that includes the judgment based on the Debtor's guarantee obligation under her son's

security agreement.

The Debtor currently owns two vehicles, a 1990 Honda Accord that she valued at

$1,412.00 and a 2000 Nissan Frontier that she valued at $7,562.00.[10] The 2000 Nissan Frontier

secures a debt in the amount of approximately $5,030.37.[11] The monthly payment on that vehicle

was scheduled at $220.00[12], but was determined at trial to be $318.51.[13]

On April 10, 2005, the United States trustee filed a motion under 11 U.S.C. § 707(b) to

dismiss this case on the grounds that granting relief would constitute substantial abuse.

## II. Discussion

A case under chapter 7 may be dismissed if (1) the debtors' debts are primarily consumer

debts and (2) it would be a substantial abuse of the provisions of chapter 7 of the bankruptcy

---

[7]     See Debtor's Schedule A.

[8]     See Debtor's Schedule A.

[9]     See Debtor's Schedules D and F.

[10]     See Debtor's Schedule B.

[11]     See Debtor's Schedule D.

[12]     See Debtor's Schedule J.

[13]     See Debtor's Exhibit 4.  Also see Testimony of the Debtor, Transcript of Hearing, Page 27: line 16
to page 29: line 8.

3

code to grant relief. 11 U.S.C. § 707(b)[14].

"There shall be a presumption favor of granting the relief requested by the debtor." 11

U.S.C. § 707(b). The burden of proof and the burden of production in a motion to dismiss for

substantial abuse clearly rests with the moving party, in this case the United States trustee. See 4

Collier on Bankruptcy, "Dismissal", ¶ 707.04[5][a], p. 707-27 (15th ed. rev.) (Citing Green v.

Staples (In re Green), 934 F.2d 568 (4th Cir. 1991)). But, the presumption is meant to be

something more that a rule about the burden of proof since that burden would already have been

on the party seeking to dismiss the case. Collier, supra. "Therefore, it appears that the

presumption is an indication that in deciding the issue, *the court should give the benefit of any*

*doubt to the debtor* and dismiss a case only when a substantial abuse is clearly present." 4

Collier on Bankruptcy at 707-28. (Emphasis added.)

The first issue is whether the Debtor's debts are consumer debts. Consumer debts are

those "incurred by an individual primarily for a personal, family, or household purpose". 11

U.S.C. § 101(8). The Debtor does not deny that her debts are primarily consumer debts in this

case.

We turn now to the second issue, that of substantial abuse. In Green, the Fourth Circuit

provided trial courts with guidance to determine whether granting relief to a debtor would

---

[14]      Section 707(b) provides:

(b) After notice and a hearing, the court, on its own motion or on a motion by the United States trustee, but
not at the request or suggestion of any party in interest, may dismiss a case filed by an individual debtor
under this chapter whose debts are primarily consumer debts if it finds that the granting of relief would be a
substantial abuse of the provisions of this chapter. There shall be a presumption in favor of granting the
relief requested by the debtor. In making a determination whether to dismiss a case under this section, the
court may not take into consideration whether a debtor has made, or continues to make, charitable
contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to any qualified
religious or charitable entity or organization (as that term is defined in section 548(d)(4)).

4

constitute substantial abuse.  In <u>Green</u>, the debtor was employed as a bus driver, a job that he had

held for at least 13 years.  His income exceeded his necessary expenses by $638.00 per month.

He had earned $46,000.00 during 1988, but asserted that he had been out of work for six months

and estimated that he would only earn $26,000.00 in 1989.  The Bankruptcy Court granted the

motion to dismiss the debtor's case solely on the grounds that he had disposable income.  The

United States District Court affirmed the decision of the Bankruptcy Court.

On appeal, Fourth Circuit Court of Appeals held that the fact that the debtor had

disposable income beyond his expenses was not sufficient in and of itself to warrant dismissal of

the debtor's case.

The Fourth Circuit Court of Appeals held that a debtor's ability to pay his or her debts

when due, as determined by his ability to fund a Chapter 13 plan, does not, by itself, constitute

substantial abuse.  <u>Green</u>, 934 F.2d at 571-572.  Rather, the Court concluded that "the

determination must be made on a case-by-case basis, in light of the totality of the circumstances."

<u>Green</u>, 934 F.2d at 572.   The Court remanded the case to the Bankruptcy Court with instructions

to consider the totality of the circumstances.

Because the Bankruptcy Court had based its decision solely on the fact that the debtor had

disposable income, the Fourth Circuit Court of Appeals first addressed the degree to which a trial

court should consider disposable income in rendering a decision on a motion under section

707(b).[15]  The Fourth Circuit first stated that the existence of disposable income does not,

---

[15]        Disposable income is defined, for purposes of section 1325, which requires the debtor to pay all of
his or her disposable income into the plan, as "income which is received by the debtor and which is not reasonably
necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. . ." 11 U.S.C. §
1325(b)(2).

without more, constitute substantial abuse. The Court considered such a per se rule by first

looking at the Congressional history.

> The ambiguity of the statutory language is no doubt a reflection of Congress's inability to
> agree on a definition of substantial abuse which would encompass these countervailing
> considerations in all situations. Nevertheless, in unsuccessfully attempting to carve out
> such a definition, Congress considered and rejected the use of a threshold future income
> or ability to repay test (known as "mandatory Chapter 13") as a qualification for Chapter
> 7 relief for consumer debtors. [Footnote omitted.] *In re Deaton,* 65 B.R. 663, 665
> (Bankr.S.D.Ohio 1968).

Green, 934 F.2d at 571.

The Court also rejected a *per se* rule in light of a fundamental precept of bankruptcy law.

"The establishment of a future income threshold of eligibility for Chapter 7 by means of the *per*

*se* rule we are urged to adopt would render this presumption [in favor of granting the relief

requested by the debtor] toothless." Green 934 F.2d at 573.

Finally, the Fourth Circuit considered the Bankruptcy Code and Rules as a whole and

section 109[16] of the Bankruptcy Code in particular.

---

[16] Section 109(b), which concerns whether a person is eligible to be a chapter 7 debtor, provides:

(b) A person may be a debtor under chapter 7 of this title only if such person is not--
    (1) a railroad;
    (2) a domestic insurance company, bank, savings bank, cooperative bank, savings and loan
    association, building and loan association, homestead association, a New Markets Venture Capital
    company as defined in section 351 of the Small Business Investment Act of 1958, a small business
    investment company licensed by the Small Business Administration under subsection (c) or (d) of
    section 301 of the Small Business Investment Act of 1958, credit union, or industrial bank or
    similar institution which is an insured bank as defined in section 3(h) of the Federal Deposit
    Insurance Act, except that an uninsured State member bank, or a corporation organized under
    section 25A of the Federal Reserve Act, which operates, or operates as, a multilateral clearing
    organization pursuant to section 409 of the Federal Deposit Insurance Corporation Improvement
    Act of 1991 may be a debtor if a petition is filed at the direction of the Board of Governors of the
    Federal Reserve System; or
    (3) a foreign insurance company, bank, savings bank, cooperative bank, savings and loan
    association, building and loan association, homestead association, or credit union, engaged in such
    business in the United States.

6

Moreover, nowhere in the Code is there a requirement that a debtor be insolvent in order to file for bankruptcy. Section 109, which the 1984 Amendments left unchanged, allows any person to be a debtor under Chapter 7 unless he comes within one of several limited exceptions, none of which apply to consumer debtors and none of which are predicated upon anticipated income. 11 U.S.C.A. § 109 (1979 & West Supp.1990). Section 109, taken together with the Senate report on Section 707(a) cited *infra,* provides a strong indication that Section 707(b) was intended to explicitly recognize the court's ability to dismiss a Chapter 7 petition for lack of good faith-- when "the total picture is abusive." *Waites v. Braley, supra,* 110 B.R. at 215 (quoting bankruptcy court Opinion and Order; *but see* 217, holding that neither bad faith nor fraud is an element required for a finding of substantial abuse).

Id.

As noted above, in <u>Green</u> the Fourth Circuit Court of Appeals listed five factors in addition to disposable income that trial courts should consider when entertaining a motion to dismiss for substantial abuse. They are:

(1)    Whether the bankruptcy petition was filed because of sudden illness, calamity, disability, or unemployment;

(2)    Whether the debtor incurred cash advances and made consumer purchases far in excess of his ability to repay;

(3)    Whether the debtor's proposed family budget is excessive or unreasonable;

(4)    Whether the debtor's schedules and statement of current income and expenses reasonably and accurately reflect the true financial condition;

(5)    Whether the petition was filed in good faith;

<u>Green</u>, 934 F.2d at 572.

At the end of the <u>Green</u> opinion, the Fourth Circuit Court of Appeals cited three opinions that trial courts might find helpful in considering motions under section 707(b), thus providing three more factors.

7

(6)    Whether the debtor engaged in free-wheeling spending[17];

(7)    Whether the debtor altered monthly obligations in statements to the court at least

three times[18]; and

(8)    Whether the debtor chose Chapter 7 over Chapter 13 in order to voluntarily pay

favored creditors[19].

Green, 934 F.2d at 573.

As with any totality-of-the-circumstances test, the analysis does not consist of an

accounting, rather, each factor is considered in light of its weight and relevance in the case under

consideration.  A factor that is irrelevant in one case may be determinative in another.

A. The Debtor's Disposable Income.

We first turn to whether the Debtor has disposable income that she could use to fund a

chapter13 plan.   This is the primary factor is to be considered by a bankruptcy court when

considering a motion to dismiss a case for substantial abuse.  See In re Harrelson, 323 B.R. 176,

179 (W.D.Va. 2005).  ("[T]he ability to repay, although not a dispositive factor, is the primary

factor in determining substantial abuse.")

The amount of a debtor's disposable income is important in the context of a motion under

section 707(b) because it is one of three minimum amounts a debtor must pay through a chapter

---

[17]    See In re Grant, 51 B.R. 385, 396 (Bankr. N.D.Ohio 1985) (Cited in Green, 934 F.2d at 573.)

[18]    See In re Peluso, 72 B.R. 732, 738 (Bankr. N.D.N.Y. 1987) (Cited in Green, 934 F.2d at 573.)

[19]    See In re Shands, 63 B.R. 121, 123 (Bankr. E.D.Mich 1985) (Cited in Green, 934 F.2d at 573.)

8

13 plan if that plan is to be confirmed.[20]  In other words, it is a measure of the amount that the

Debtor could pay toward his or her unsecured debt if he or she chose to file a case under chapter

13.  Disposable income may be defined as the difference between a debtor's net income and his

net expenses.[21]

    In a case in which a married debtor files an individual petition, it is appropriate to

consider the income and expenses of both spouses.  The total gross monthly income for both the

Debtor and Mr. Taylor are referred to herein as "the Total Gross Monthly Income" and the total

net monthly income is referred to herein as "the Total Net Monthly Income".

    *Net Monthly Income.*  In her Amended Schedule I, the Debtor scheduled her gross

monthly income at $2,083.37.  The United States trustee, based on the debtor's pay stubs,

calculates the Debtor's gross income at $2,159.17 per month.[22]  The Court agrees with this

calculation.

    In her Amended Schedule I, the Debtor scheduled her net monthly income at $1,242.19.

This amount includes deductions for taxes and social security ($306.33), Insurance ($39.24),

401K contribution ($104.17), and 401K loan repayments ($391.44), for a total payroll deduction

of $841.28.  The debtor would not be permitted to deduct the 401K contribution or repayments in

calculating her disposable income in chapter 13.  It would appear that the Debtor's total

---

[20]    A debtor must commit all of his or her disposable income to plan payments if the plan is to be
confirmed.  See 11 U.S.C. § 1325(b)(1)(B).  Additionally, the debtor must pay all priority claims as defined in
section 507(a) in full, see 11 U.S.C. § 1322(a)(2), and must pay unsecured claims in an amount equal in an amount
to what those creditors would receive if the case were a case under chapter 7 (commonly referred to as the best-
interest-of-the-creditors test) see 1325(a)(4).

[21]    See footnote 15 , supra, for the definition "disposable income" in the bankruptcy code.

[22]    See United States trustee Exhibit #5.  This calculation is made by multiplying the Debtor's bi-
weekly gross income, $996.54, times 26 (the number of two-week periods in a year) and dividing by 12 (the number
of months in a year).

allowable deductions are $345.57.

There must, however, be one more adjustment to this amount. If the debtor is not

permitted to make the $104.17 contribution each month to her 401K account, then her taxable

income will increase by that amount. Consequently, it is necessary to estimate her income

(federal and state) tax rate on that marginal amount for purposes of estimating her disposable

income in chapter 13. The estimates that her federal marginal tax rate would be 15% and her

marginal Virginia State income tax rate would be 5%.[23] The Debtor would have to pay $20.83 in

additional taxes if the 401K contribution in the amount of $104.17 were not withheld from her

paycheck. Thus, then the total payroll deduction that the Debtor would be allowed for purposes

of calculating disposable income in chapter 13 would be $366.40. The Debtor's net monthly

income before expenses is $1,792.77 ( = $2159.17 - $366.40).

In her Amended Schedule I, the Debtor scheduled Mr. Taylor's gross monthly income at

$1,690.00. She scheduled his payroll deductions for taxes, insurance and child support at

$647.51. His net income before expenses is $1,042.49. The United States trustee does not

challenge this amount. The Debtor's Total Net Monthly Income is $2,835.26 ( = $1,792.77 +

$1,042.49).

*Expenses.* We now turn to a consideration of the Debtor's expenses. While the analysis

of a debtors' expenses is generally the same in a "substantial abuse" motion as it is during the

chapter 13 confirmation process, the purpose, and hence the scrutiny, is different.

---

[23]    The Virginia marginal income tax rate for taxable income above $5,000.00 is 5%. The federal
marginal income tax rate for married couples filing separately is 15% for taxable income above $7,300.00. It is 15%
for married couples filing jointly for taxable income above $14,600.00. The Debtor would clearly be in a tax bracket
at or above these rates.

10

There, the standard is the necessary support and maintenance of the debtors and their dependents. Some of these expenses may be more finely tuned in a chapter 13 case. 11 U.S.C. § 1325(b)(2). Here, the standard is different. It is one of substantial abuse. 11 U.S.C. § 707(b). The difference is further discussed below.

In re Vansickel, 309 B.R. 189, 199, n. 19 (Bankr. E.D.Va. 2004). The Court also stated:

The purposes of § 707(b) and § 1325(b)(1)(b) are different. Section 1325 is designed to assure that a chapter 13 debtor makes his best efforts in a chapter 13 plan. Section 707(b) is a gatekeeping provision designed to assure that chapter 7 is not abused. The abuse sought to be prevented is "a debtor seeking to take unfair advantage of his creditors." *Green*, 934 F.2d at 572.

Vansickel, 309 B.R. at 208.

*The Debtor's expenses.* The Debtor scheduled her monthly expenses at $1,781.00 in her original Schedule I. This amount includes a mortgage payment ($655.00), Utilities ($50.00), Telephone ($30.00), Cable ($89.00), Food ($100.00), Clothing ($50.00), Medical and Dental Expenses ($70.00), Transportation expenses other than vehicle payments ($100.00), Automobile insurance ($145.00), Father's life insurance ($68.00), Citifinancial [second deed of trust] ($204.00). She schedules $00.00 for each of the following items: home repairs and upkeep, recreation, charitable contributions, laundry and dry cleaning.

After the United States trustee filed the motion to dismiss, the Debtor filed Amended Schedule J. She listed $2,800.00 in expenses, an amount that included expenses necessary to support both the Debtor and her husband. Of these expenses, the United States trustee asserts that the $198.00 for car insurance should be $149.00, that the $320.00 for a car payment should be $220.00 and that the $68.00 for a premium on her Father's life insurance would not be allowed for purposes of calculating the debtor's disposable income in a chapter 13 case.

The Debtor agrees with the reduction in the insurance and the elimination of the $68.00

11

insurance premium as an expense. The United States trustee agreed at trial that the $320.00 car payment was correct.   The Debtor's monthly expenses total $2,683.00 ( = $2,800.00 - $49.00 - $68.00).

*Calculation of the Debtor's Disposable Income.*   The Debtor's Total Net Monthly Income is $2,835.26.   Her total monthly expenses are $2,683.00.   The amount of disposable income that she would have to fund a chapter 13 plan each month is the difference between these two amounts, $152.26.

The Debtor could pay $5,481.36.00 during the pendency of a 36-month plan.  Of that amount her attorney would receive $1,600.00.[24] That would leave $3,881.36.  The chapter 13 trustee would receive approximately 8% of the full amount of all plan payments ($5,481.36), or $438.50.  That would leave $ 3,442.86 ( = $5,481.36 - $1,600.00 - $438.50) for unsecured creditors, an amount that would permit her to pay approximately 14.4% (= $3,442.86 / $23,835.71) of her scheduled unsecured debt.

While this percentage is not great, the Debtor can afford to make some contribution to her unsecured creditors through a chapter 13 plan.  This primary factor to be considered by a bankruptcy court when the United States trustee has filed a motion for substantial abuse weighs slightly in favor of granting the motion.

B. Other Green Factors

*(1) Financial Trauma.*  The first factor other than disposable income mentioned in Green concerns whether the debtor has experienced a financial trauma in the time leading up to the

---

[24]        This Court permits attorneys for debtors in chapter 13 to charge a flat fee of $1,600.00 from the time of the initial interview through the confirmation process.

filing of the petition. One question that this factor raises is whether the absence of a trauma is

reason to deny relief under chapter 7.

If a debtor has not experienced a large medical debt, an involuntary change in

employment, or a change in the family structure such as a divorce or the death of a spouse,

should that debtor still be afforded relief under chapter 7?   Or should this factor be one that may

only weigh in favor of the debtor?   The United States District Court for the Western District of

Virginia has commented on this issue:

> Under the first factor, the bankruptcy petition was not filed because of sudden
> illness, calamity, disability, or unemployment. Courts have held that this factor weighs in
> favor of substantial abuse when filing is not due to some "unforeseen tragedy." *In re
> Norris,* 225 B.R. 329, 333 (Bank.E.D.Va.1998); *see In re Vansickel,* 309 B.R. 189, 211
> (Bank.E.D.Va.2004). The [debtors] assert that the first factor requires a court to look
> more generally at the reason behind the filing. Even so, it is clear that the [debtors] did
> not file due to an unforeseen tragedy. Rather they filed because of sizeable debt which
> they gradually incurred over the years. Therefore, the first factor weighs in favor of a
> substantial abuse finding.

Harrelson, 323 B.R. at 178.[25]

There is strong evidence that the debtor experienced a pre-petition decrease in hourly

income. In his opening statement, counsel for the Debtor stated that the Debtor's financial

problems began in January of 2004 [sic] when her hourly wage was reduced from approximately

---

[25]      Cf. In re Attanasio, 218 B.R. at 230-231. ("Several courts have stated that a factor to be
considered in determining substantial abuse is whether the debtor's bankruptcy petition was filed because of sudden
illness, calamity, disability, or unemployment. [Citing Green]. The reasoning appears to be that a debtor whose
petition was filed because of an intention to incur debts without the ability to pay, should not be entitled to a Chapter
7 discharge, but, that a debtor whose bankruptcy petition was filed because of sudden illness, calamity, disability,
unemployment, or other unforeseen forces over which there was no control, should be entitled to a Chapter 7
discharge. [¶] This Court respectfully disagrees.   Clearly, bankruptcy is not limited to those debtors whose
difficulties resulted from calamity and had Congress intended for calamity to be a threshold eligibility requirement
for Chapter 7 relief it could have included that factor.   Section 707(b) was intended and designed to address
economic issues, therefore, it should be interpreted in a manner that focuses on a debtor's need for bankruptcy relief,
rather than in a manner that attaches other significance to the reasons for the debtor's need for bankruptcy relief.")

13

$14.83 per hour to $12.46 per hour, a reduction of or 16% or $2.37 per hour.[26]

While it is unclear whether the Debtor incurred a reduction in income in January of 1004, or 2005, the statement that she incurred a reduction is supported by the evidence. In her statement of financial affairs, filed at the beginning of the case, the debtor disclosed 2002 gross income of $30,000.00, 2003 gross income of $30,000.00 and 2004 gross income of $32,353.00. If a person earned an hourly wage of $14.83 and worked 40 hours per week for 52 weeks, she would earn a gross annual income of $30,908.80. This amount is approximately equal to the Debtor's income in each year from 2002-2004. The Debtor's current hourly wage is income is $12.46.[27] It is concluded that at sometime prior to the filing of her petition, the Debtor incurred a wage decrease of $2.37 ( = $14.83 - $12.86) her hour, or approximately $410.80 per month in or about January of 2005.[28]

While this may not seem like a catastrophic reduction in income to some, it could be crucial to someone such as the Debtor who is making ends meet only through a very frugal, if not Spartan, budget. In this case, the Debtor has budgeted only $350.00 for food per month for two adults, has budgeted $50.00 per month for recreation, and has budgeted nothing for charitable contributions. Furthermore, she has budgeted $200.00 for transportation, including gas, maintenance and repairs for two vehicles, one of which is five years old and one of which is 15 years old.

Given the debtor's original frugal budget, the confluence of the 25% wage garnishment

---

[26]    See Debtor's Opening Statement, Transcript of Hearing, page 14: lines 10-19.

[27]    See Debtor's pay stubs, United States trustee's Exhibit #4.

[28]    This amount is calculated by multiplying the change in hourly rate, $2.37, by the number of hours in the work year, 2040, and dividing that amount by the number of months in a year, 12.

14

against the Debtor's income and the reduction in income suffered by the Debtor constituted a

significant financial trauma to the Debtor's financial situation.  The United States trustee has

failed to carry his burden of proof regarding this factor.  This factor weighs in favor of the debtor.

    *(2) Excessive Credit.*  The second factor requires this Court to ascertain whether the

Debtor "incurred cash advances and made consumer purchases *far* in excess of his or her ability

to pay".  Green, 934 F.2d at 572 (Emphasis added.).  There is nothing in the record indicating that

the  Debtor has ever taken any cash advances.

    The United States trustee asserts in memorandum in support of his motion to dismiss that

the Debtor's result is the result of her living beyond her means.   In support of this, the United

States trustee asserts that almost "all of the $23,835 in general unsecured debt consists of the

claim of two creditors for personal loans.  One of the creditors has reduced its claim to a

judgment of $15,073."  It is unclear what this statement, without more, has to do with whether

the Debtor has been living beyond her means.  It gives the Court no guidance and it surely falls

demonstrably short of meeting the burden of proof.

    In his opening statement, the United States trustee stated that the debtor "cosigned her

son's loan despite her obvious inability to repay the loan".  The Court disagrees.  First, the

Debtor co-signed for her son at a time when her annual income was more that $4,900.00 more

than it was on the date that she filed her petition.   Second, the lending institution obviously

decided that she did have the ability to repay the debt, at the time, or it would not have lent her

son the money.  Finally, the United States trustee presents no evidence in support of the

proposition that she did not have the ability to repay the debt at the time that the loan was made.

It appears that the United States trustee rests the argument on the fact that the debtor was unable

15

to make the payments some two or three years later. This simply proves too much. In order for

the reasoning of the United States trustee to be correct in every case, fraud on the contract and

breach of contract would necessarily have to be one and the same cause of action. And, they are

not. The United States trustee has not carried his burden of proof regarding this factor. This

factor weighs heavily in favor of denying the United States trustee's motion.

*(3) Excessive Budget.* The third factor concerns whether the debtors' proposed budget is

excessive or unreasonable. It is first necessary to place this factor in context with the other

factors in light of the purpose of the inquiry. As one Court has stated:

> Any determination of "substantial abuse" necessitates some evaluation of the debtors'
> expense and income statements, and thus some scrutiny of their personal spending habits,
> In re Gyurci, 95 B.R. 639, 643 n.3 (Bankr. D. Minn. 1989), but this Court's role is not to
> formulate the debtors' budget. Instead, it is to act if there is clear evidence of abuse.
> The last line of § 707(b) grants a presumption in favor of granting relief to the debtor, and
> this presumption should apply when examining the debtors' schedules. A stricter
> interpretation would lead to non-uniformity and confusion as judges pass personal
> judgement about how people should spend their money.

In re Tefertiller, 104 B.R. 513, 514-515 (Bankr. N.D.Ga. 1989).

In his pre-trial memorandum in support of his motion to dismiss, the United States trustee

discussed the Debtor's "Family Budget". It does not appear that the United States trustee is

asserting that the Debtor's budget is excessive under this heading or in any other pleading or

statement at trial.

The United States trustee does argue that the Debtor would not be allowed to include the

premium on her father's life insurance policy as an expense in the calculation of disposable

income for purposes of determining her minimum payment in a chapter 13 plan. The Debtor did

not disagree. But if she were making the payment each month pre-petition, it would have been

16

improper for her to delete it from her Schedule I when she filed her chapter 7 petition. In fact had she omitted the payment, the United States trustee would have argued that her schedules were inaccurate. The Debtor's budget is not excessive. This factor weighs heavily in favor of denying the motion to dismiss.

(4) *Accuracy of the Debtors' Schedules and Statement of Financial Affairs.* The fourth factor for consideration is whether the Debtors' schedule and statement of current income and expenses reasonably and accurately reflect their true financial condition. In this case, the Debtors' Schedules I and J are accurate.

The Debtor accurately scheduled those expenses that she pays from her income. She did not schedule those expenses that her husband pays from his income. The United States trustee also argues that the debtor's schedules as originally filed did not show her true financial condition. If she had scheduled all of the expenses that both she and her husband paid, then the United States trustee would argue that she should have only paid those expenses that she paid. Nor was there any attempt to conceal the fact that she was married, a fact that the Debtor disclosed on her original Schedule I. This factor weighs in favor of denying the United States trustee's motion to dismiss this case.

(5) *Bad Faith.* The United States trustee stated at trial that he does "not contend that there are any of the traditional factors of bad faith" present in this case.[29]

### III. Conclusion

During all times relevant to the issues under consideration, the debtor managed her finances by employing a more than reasonable budget. With this budget, she could afford to

---

[29]     Transcript of hearing, p. 7, lines 3-10.

17

make a monthly payment of $152.26 toward a chapter 13 plan.   After paying chapter 13 legal

fees and trustees fees, she could pay 14.4% of her unsecured debt if she did not incur any

unexpected expenses, such as those to her vehicles, now five year old and fifteen years old.

All of the other factors suggested by the Fourth Circuit Court of Appeals weigh heavily in

favor of the Debtor and in favor of denying the motion to dismiss.  As the Fourth Circuit Court of

Appeals wrote in <u>Green</u>, ". . . Section 707(b) was intended to explicitly recognize the court's

ability to dismiss a Chapter 7 petition for lack of good faith-- when "the total picture is abusive."

<u>Green</u> 934 F.2d at 573.  (Quotation omitted.)  In this case, not only is the total picture not

abusive, it reveals a debtor who conducted her finances in a very reasonable manner.  She only

experienced financial difficulty when her son failed to make his car payments and she

experienced a $4,900.00 loss in annual income.   Even then, she used her own tax-deferred

savings to pay debts before turning to this Court for relief.

The United States trustee's motion to dismiss this case shall be denied.

The Court will issue an appropriate order.

Upon entry of this Memorandum the Clerk shall forward copies to the United States

trustee, the chapter 7 trustee, the Debtor and Mitchell R. Garbee, Esq., counsel for the Debtor.

Entered on this 14th day of November, 2005.

William E. Anderson
United States Bankruptcy Judge

18